# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TED LEACH, | ) | 1:09-CV-01103-GSA |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S SOCIAL |
| Plaintiff, | ) | SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**BACKGROUND**

Plaintiff Ted Leach ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

//

//

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 9 & 10.

1

**FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed his application on or about May 5, 2004, alleging disability beginning February 1, 1993. AR 63-65. His application was denied initially (AR 25-29) and on reconsideration (AR 32-37); thereafter Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 38. ALJ Patreia Leary Flierl held a hearing on October 25, 2006 (AR 455-486) and issued an order denying benefits on February 22, 2007. AR 8-18. Plaintiff requested a review of the hearing (AR 19) and the Appeals Council denied review. AR 5-7.

**Hearing Testimony**

ALJ Flierl held a hearing on October 25, 2006, in Fresno, California. Plaintiff appeared and testified. He was represented by attorney Melissa Proudian. Vocational Expert ("VE") Judith Najarian also testified. AR 455-486.

Plaintiff was born on November 21, 1959. He is 47 years old. AR 457. He is six feet tall, weighs 239 pounds, and is right handed. AR 458. Two to four years ago he weighed 200 pounds. The increase in weight is due to medication, depression, and anxiety. AR 458. Plaintiff is not married. AR 458. He has a 15-year old son, who was put in long term foster care. AR 458, 477. He took parenting classes, participated in rehabilitation, and is seeking parental reunification rights. AR 477-478.

When asked about where he lives, Plaintiff testified that he lost his home because he could not pay the mortgage. AR 464-465. He has been staying with friends and living in his car for one and a half years. AR 459, 465. Plaintiff has a cellular telephone and a post office box. AR 458-460. He has a valid California driver's license, and he drives a little bit every day to move his car around. AR 460.

Plaintiff graduated from high school. AR 460. In 1980 and 1981, he attended Fresno City College but did not complete any units. AR 460. He withdrew because his of his brother's "major criminal case." AR 460. He has had no other educational or vocational training. AR 461.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

1    In a typical day, Plaintiff runs errands, reads, and sits at the park.  AR 465.  He bathes
2 himself every day or every other day.  AR 465.  Stover Springs lets him use their kitchen and
3 bathroom, or he goes to the gym at Fresno State.  AR 465.  He likes to fish but has not fished for
4 two to three years.  AR 465.

5    When asked about his work history, Plaintiff indicated that he last worked for about ten
6 days in 2001, performing handyman services such as painting and construction work.  AR 461.
7 He was laid off because he could not do the work.  AR 461.  As a handyman, he had to lift 40 to
8 50 pounds.  AR 461.

9    In 1993, Plaintiff did shipping and receiving work at a warehouse.  AR 462.  The
10 warehouse work was part time through a temporary agency.  AR 462.  He was injured on the job
11 and settled a workers' compensation case.  AR 462, 473.  He did 14 to 16 weeks of rehabilitation
12 and physical therapy and went back to construction.  AR 473-474.  He hurt his back again but did
13 not have another workers' compensation case.  AR 473.  He did not have an attorney nor did he
14 obtain any settlement.  AR 474.  Plaintiff did not remember working in 1992.  AR 475.

15    In 1990 and 1991, Plaintiff did some piece work in construction, such as roof sheeting
16 and fascia.  AR 461, 474.  Before that, construction work was sporadic.  AR 461.  He has always
17 done construction or something related to construction.  AR 461.  He also worked at Denny's.
18 AR 461.  Between 1985 and 1990, Plaintiff worked off and on because he "couldn't find any
19 work" and "didn't have all the tools."  AR 475.  He was paid by check but his bosses weren't
20 paying Social Security.  AR 475.

21    Plaintiff is not working now.  AR 461.  His source of income is general relief and he also
22 receives food stamps.  AR 470.  Plaintiff cannot work because of his back and knees, and
23 because he has problems concentrating and remembering things.  AR 462.  He also has bad
24 headaches, muscle spasms, and cramps.  AR 463.  Plaintiff's back has been "messed up" since
25 1993.  AR 461.  The pain affects his ability to sit and stand.  He can sit in a chair for about 15 to
26 20 minutes, then he has to get up and walk around.  AR 468.  He can stand for approximately 20
27 minutes.  AR 468.  He can walk for about 15 or 20 minutes out of an hour.  He can walk about a
28 block before he has to stop.  AR 468.  He can lift up to 10 pounds without pain.  AR 469.

When asked about his ability to concentrate and focus his attention, Plaintiff stated that it varies from day to day depending on stress and what he has to do. AR 469. On his worst day, the longest he can concentrate is 30 minutes. Then he has to take a break for 10 to 15 minutes to try and remember what he was doing and why. AR 469. His problems concentrating are because of attention-deficit hyperactivity disorder (ADHD). AR 469. Plaintiff indicated he would not be able to concentrate for successive 30-minute periods, with breaks in between, during an eight hour day. AR 470.

Plaintiff was diagnosed with posttraumatic stress disorder (PTSD). AR 480. He is severely depressed most of the time. AR 464. When he is depressed, he does not want to see or talk to anybody. He isolates himself. AR 464. His depression makes him unable to focus. AR 471. He has suicidal thoughts once or twice per month. AR 471.

Sometimes when Plaintiff is by himself, he hears the voices of a man, woman, or child. AR 466. They call his name and say certain things, but he cannot quite make out what they are saying. AR 466. This happens a couple times per week. AR 466. When it does happen, Plaintiff takes his medication and listens to the radio on his headphones. AR 466.

When Plaintiff is around large groups of people in an enclosed room, he withdraws and has anxiety attacks. AR 472. This happens two to three times per week. AR 472. They are relieved by leaving the area where he is. AR 473. He also has panic attacks once every two or three days, caused by nightmares. AR 472.

Fresno County Mental Health treats Plaintiff for depression, anxiety, and stress, which affect his ability to function. AR 463. He started treating there a little over two years ago. AR 479-480. Plaintiff had mental health problems before but never received treatment. AR 480. He "pretty much grew up with [depression]." AR 463.

Plaintiff takes 200 milligrams of Zoloft and 100 milligrams of Elavil every night for depression. AR 467. They help "somewhat." AR 471. He takes Tramadol, Gabapentin, and Naproxen for pain several times per day. AR 467-468. When he takes the pain medication, it takes away the pain for "a couple of hours." AR 467-468. He also takes Methocarbamol for muscle relaxation, Lipitor for high cholesterol, and Triamterene for high blood pressure. AR

4

1  467.  Side effects of the medication include buzzing and ringing in his ears, blurry vision,
2  dizziness, drowsiness, muscle spasms, cramps, and shooting pains.  AR 466-468.
3       Dr. Chu is Plaintiff's mental health treating source.  Plaintiff sees him for prescriptions of
4  Zoloft and Elavil every two to three months.  AR 471.  He has told Dr. Chu about the voices he
5  hears several times.  AR 471.  The doctor said that the medications can only help so much and
6  that he cannot up the dosage because Plaintiff is taking the maximum dosage of each drug.  AR
7  472.
8       Plaintiff was treated for abuse of alcohol and marijuana.  He went through a rehabilitation
9  program.  AR 463, 477.  He is not currently being treated for alcohol or drug abuse, and his last
10 drug test was one and a half years ago.  AR 464.  He does not do illegal drugs, and the last time
11 he had marijuana was months or years ago.  AR 464, 476.  The last time he had alcohol was the
12 previous weekend.  He drank two beers at a friend's barbecue.  AR 464.  He drinks one to two
13 beers every one to two weeks, and at most a beer each day.  AR 464, 476.  When Plaintiff is not
14 drinking alcohol, the symptoms of his depression do not change.  AR 464.
15      VE Najarian testified that Plaintiff's previous work as a warehouse laborer was
16 considered a heavy physical demand, unskilled (AR 481), the short order cook is light, semi-
17 skilled (AR 480), and construction is heavy, semi-skilled.  AR 482.  VE Najarian was asked to
18 consider a hypothetical individual of Plaintiff's age, education, and vocational background, who
19 is able to do sedentary work with occasional climbing, balancing, crouching, crawling, and
20 stooping, and is further limited to simple repetitive tasks.  AR 482.  The VE indicated that this
21 hypothetical individual could perform sedentary skilled work, of which there are 134 job titles
22 corresponding to about 80,000 jobs in California.  AR 483.  She offered examples including:
23 assembler, 5,317 jobs in California; almond blancher, 6,650 jobs in California; and nut sorter,
24 1,770 jobs in California.  AR 484.  Approximately nine times this number of jobs exist in the
25 national economy.  AR 484.
26      VE Najarian was asked to consider a second hypothetical individual of Plaintiff's age,
27 education, and vocational background, who is able to do light work with occasional balancing,
28 crouching, and crawling, and is further limited to simple repetitive tasks.  AR 482.  The VE

5

indicated that such an individual could not perform any of Plaintiff's past relevant work.  AR 484.  She further indicated that this hypothetical individual could perform 1,571 job titles corresponding to about 741,036 jobs in California.  AR 484-485.  She offered examples including: small products assembly, 33,232 jobs in California; hand washer, 32,508 jobs in California; and bottle line attendant, 31,055 jobs in California.  AR 485.  Approximately nine times this number of jobs exist in the national economy.  AR 485.

Finally, VE Najarian was asked to consider a third hypothetical individual, as posed by Plaintiff's counsel, with the same vocational factors as in the first hypothetical, with the added nonexertional limitation that he could not consistently show up to work every day due to severe mental impairments, and therefore possibly could not complete a full work week.  AR 485.  VE Najarian indicated that no work would be available to such an individual.  AR 485.

**Medical Record**

The entire medical record was reviewed by the Court.  A summary of the reports and treatment notes is provided below.

*Benjamin Chang, M.D.*

On July 26, 2003, orthopedist Benjamin Chang, M.D. performed a comprehensive evaluation.  AR 150-152.  Plaintiff's chief complaint was chronic low back pain.  He stated that he injured his lower back in 1987 and again in 1993.  AR 150.  Dr. Chang noted that Plaintiff was able to walk on toes, heels, and in tandem, and had no trouble getting on or off the examination table.  AR 151.  The doctor's physical examination revealed limited range of motion and mild tenderness on palpation of the lower lumbar spine, but no spasm, crepitus, effusion, or deformities.  AR 151-152.  The neurological examination was unremarkable.  AR 152.  The doctor diagnosed Plaintiff with chronic low back pain.  He ruled out left lower extremity lumbar radiculopathy.  AR 152.

Dr. Chang opined that: (1) Plaintiff could stand, walk, and sit for about six hours in an eight-hour workday with normal breaks; (2) there was no need for assistive devices; (3) Plaintiff could lift and carry 20 pounds frequently and 50 pounds occasionally; (4) postural limitations

included occasional bending, stooping, crouching, crawling, pushing, and pulling; and (5) there were no other manipulative limitations. AR 152.

On October 16, 2004, Dr. Chang performed an orthopedic consultation. AR 267-271. Plaintiff's chief complaint was chronic neck and back pain. AR 267. The doctor noted that Plaintiff smoked 20 cigarettes per day and consumed two to three alcoholic drinks per day. AR 268. The doctor also noted that Plaintiff had some difficulty getting on and off the examination table and walking on his toes and heels. AR 268. The examination revealed decreased range of motion in the cervical spine, and mild spasm and tenderness on the posterior cervical paraspinal muscles. The examination also revealed decreased range of motion and mild tenderness to percussion in the lumbar spine. Plaintiff could flex the lumbar spine to 50 degrees with pain, and recover with difficulty. AR 268-269. Plaintiff had decreased strength is his left hip and left knee. AR 270. Other findings were unremarkable. AR 267-271. The doctor's impression included chronic neck and back pain, "probably due to myofascial pain syndrome." He ruled out mild radiculitis in the left cervical and lumbar spine. AR 271.

Dr. Chang opined that Plaintiff had the functional capacity to lift and carry 10 pounds frequently and 20 pounds occasionally. He could stand and walk six hours out of an eight hour day with normal breaks, and he could sit without restriction and occasionally kneel, squat, and climb stairs. The doctor further opined that Plaintiff was unable to do work which requires repetitive bending and heavy lifting. AR 271.

### *Chinatown Family Medicine and Midwifery Medical Office*

On June 9, 2004, Plaintiff was seen for complaints of increased back pain, body aches, and insomnia. Tylenol ES, 500 milligrams, and Elavil, 50 milligrams, were prescribed. AR 181.

On July 5, 2004, Plaintiff's dosage of Elavil was increased to 100 milligrams and his prescription for Tylenol ES was changed to Ibuprofen, 800 milligrams. AR 184.

### *Donald K. Farris, LCSW*

Between July 5, 2004 and August 16, 2004, Plaintiff was treated for anxiety and depression by Licensed Clinical Social Worker (LCSW) Donald K. Farris. AR 197-199.

In an undated statement, Mr. Farris indicated that Plaintiff has been depressed and anxious since his wife died in October 2001 and had complained of severe back pain, a pinched nerve with shooting pain in his arms and legs, dental pain, auditory and visual hallucinations, panic attacks, insomnia, and vivid nightmares in bright colors. Mr. Farris stated that Plaintiff "appear[ed] unfit for any employment." AR 200.

### *Fresno New Connections*

On August 19, 2004, Teresa Liebig, a counselor at Fresno New Connections, an alcohol and drug abuse treatment facility, opined that Plaintiff had chronic depression and suffers from back pain. AR 241.

### *Fresno County*

From April 1, 2004 to October 8, 2004 and from June 21, 2005 to August 29, 2006, Plaintiff was treated by Fresno County Human Services and Fresno County Mental Health for anxiety and depression. AR 201-238, 242-263, 301-348, 429-454. Plaintiff's alcohol and marijuana abuse was frequently noted. AR 243, 246, 251, 253, 306-308, 311, 331, 333.

On April 28, 2004, a comprehensive assessment was performed. Plaintiff was diagnosed with alcohol dependence primarily, and panic disorder without agoraphobia and "physical abuse of child" secondarily. AR 218. The clinician noted that referral information from Child Protective Services indicated that Plaintiff's son reported that Plaintiff consumed 6 to 12 beers daily and was frequently intoxicated. AR 234. The clinician also noted Plaintiff's history of marijuana use and that his "[a]bility to determine an accurate [diagnosis] is contaminated due to [Plaintiff's] substance abuse." AR 234.

### *Ekram Michiel, M.D.*

On October 16, 2004, board certified psychiatrist Ekram Michiel performed a psychiatric evaluation. AR 264-266. Plaintiff complained of feeling sad since he had been hurt on the job in 1993 and stated that it became worse when his wife passed away. AR 264. He stated that he used marijuana until April 2004, and presently drinks "three beers twice per week." AR 264. Dr. Michiel noted that Plaintiff is able to take care of his personal hygiene, shop, cook, and do

light household chores.  AR 265.  The doctor noted that Plaintiff "was using a cane to assist with ambulation and posture was normal."  AR 265.

The mental status examination revealed no involuntary movements or specific mannerisms, good eye contact, and normal speech with no latency.  AR 265.  Plaintiff was oriented to person, place, and date.  He could recall three out of three objects in one minute and five minutes, respectively.  He knew the names of the two most recent United States Presidents.  AR 265.  He could interpret proverbs and identify similarities.  When asked what he would do if he found a letter on the street, Plaintiff stated he would "mail the envelope."  AR 265.  When asked what he would do if he was in a movie theater and someone yelled "fire," Plaintiff stated he would "call the police."  AR 265.  Dr. Michiel described Plaintiff's mood as depressed and his affect as blunted.  Plaintiff denied suicidal or homicidal ideations.  AR 265.

Dr. Michiel's diagnoses included cannabis dependence in early remission, alcohol abuse, depressive disorder not otherwise specified ("NOS"), and history of back injury with pain.  The doctor assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 60-65.[3]  AR 266.  He opined that Plaintiff could maintain attention and concentration and could carry out one or two step simple job instructions, but could not carry out an extensive variety of technical and/or complex instructions.  The doctor further opined that Plaintiff could relate and interact with coworkers, supervisors, and the general public.  AR 266.

### *Physical RFC Assessment*

On November 19, 2004, state agency physician Brian Ginsburg, M.D. completed a Residual Functional Capacity ("RFC") Assessment.  AR 292-299.  The doctor concluded that Plaintiff could lift and/or carry 10 pounds frequently and 20 pounds occasionally, could stand and/or walk about six hours in an eight-hour workday and could sit about six hours in an eight-

---

[3] The Global Assessment of Functioning or "GAF" scale reflects a clinician's judgment of the individual's overall level of functioning.  *American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed. 2000) ("DSM IV").  A GAF between 61 and 70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  A GAF between 51 and 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  DSM- IV at 34.

9

hour workday. AR 293. The doctor further concluded that Plaintiff could occasionally stoop and crouch and could frequently climb, balance, kneel, and crawl. AR 294. The doctor found no restrictions on pushing and pulling and no manipulative, visual, communicative, or environmental limitations. AR 293, 296.

On May 3, 2005, state agency physician Alfred Torre, M.D. reviewed the Physical RFC Assessment and agreed with the assessment. AR 290-291.

### *Mental RFC Assessment*

On November 22, 2004, state agency psychiatrist Evangeline Murillo, M.D. completed a Mental RFC Assessment. AR 272-289. The doctor opined that Plaintiff had the medically determinable impairments of depression and drug addiction/alcohol use, which cause him mild difficulties in maintaining concentration, persistence, or pace. AR 275, 280, 282. The doctor further opined that Plaintiff is moderately limited in his ability to understand, remember, and carry out detailed instructions. AR 286. The doctor noted, "[Plaintiff] can do simple and less complex tasks. Cannot perform complex and detailed tasks on a sustained basis. [Plaintiff] can adjust, adapt, and interact appropriately if only performing less complex tasks, and simple tasks." AR 288.

On April 29, 2005, state agency psychiatrist Archimedes Garcia, M.D. reviewed the Mental RFC Assessment and agreed with its findings. AR 290-291.

### *Sierra Adult Health Center*

On May 31, 2005, Plaintiff was seen for complaints of swollen legs. He was diagnosed with edema. AR 425.

### *University Medical Center*

On February 8, 2006, Plaintiff was seen for complaints of pain in his lower back and knees. He also complained of difficulty hearing. The doctor noted that he had difficulty walking and walked with a cane. AR 414. The doctor also noted that wax was clogging Plaintiff's left ear and partially clogging his right ear. Dosages relating to prescription medications Robaxin and Tramadol were increased. AR 414.

On July 10, 2006, Plaintiff was seen for complaints of back pain and his stated need for a new cane and walker. Plaintiff's requests for a cane and walker were accommodated. AR 393.

### **ALJ's Findings**

The ALJ found that Plaintiff has not engaged in substantial gainful activity since February 1, 1993, and has the severe impairments of left knee Pellegrini-Stieda syndrome, degenerative disc disease in the lumbar spine, history of alcohol and marijuana abuse, and depression. AR 13. Nonetheless, the ALJ determined that the severe impairments do not meet or exceed one of the listed impairments. AR 13.

Based on his review of the medical evidence, the ALJ determined that Plaintiff has the RFC to lift and carry up to 20 pounds occasionally and 10 pounds frequently. He is able to walk and/or stand for two hours and sit for eight hours in an eight-hour workday. He is able to climb (stairs, ladders, ropes, or scaffolds), balance, crawl, kneel, stoop, or crouch occasionally. Plaintiff is limited to simple repetitive tasks. AR 14.

The ALJ determined that Plaintiff has no past relevant work, is a younger individual with at least a high school education, and is able to communicate in English. AR 16. Transferability of job skills was not an issue because Plaintiff had no past relevant work. AR 16. The ALJ further determined that, considering the Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. AR 17. Accordingly, the ALJ found that Plaintiff was not disabled, as defined in the Social Security Act. AR 17.

### **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at

401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) had no past relevant work; and (5) could perform jobs that exist in significant numbers in the national economy. AR 13-17.

1  Here, Plaintiff argues that the ALJ improperly rejected the medical evidence regarding his
2  prescription and use of a cane, and that the ALJ failed to account for the breadth of limitations
3  described by the examining and consulting physicians.

## DISCUSSION

### A.   Prescription and Use of Cane

Plaintiff argues that the ALJ failed to state reasons for rejecting the prescription for a cane and Plaintiff's statement about the use of a cane. Plaintiff also argues that the ALJ failed to address his use of a cane when questioning the VE. Defendant contends that the ALJ properly considered Plaintiff's use of a cane.

"The ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

Here, the ALJ's findings do state that a "cane and walker were prescribed to assist" Plaintiff. AR 15; *see also* AR 393. In fact, the "Progress Record/Physician's Orders" dated July 10, 2006, referred to by the ALJ noted that Plaintiff's chief subjective complaint was that he needed a new cane and walker. The physician himself however made no objective observations regarding Plaintiff's need for a cane, and neither did he diagnose any medical condition that necessitated one. Nevertheless, the doctor included a cane and walker in his treatment plan. AR 393. The prescription of a cane and walker thus appears to be an accommodation of Plaintiff's request, rather than a medical determination that a cane was necessary. Even assuming the doctor's notation is an opinion, it is brief, conclusory, and inadequately supported by clinical findings. *Thomas v. Barnhart*, 278 F.3d at 957. Therefore, the ALJ was not required to accept it.

Social Security Ruling provides that "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed . . . ." SSR 96-9p. Here, as noted above, Plaintiff fails to cite any medical evidence supporting the use of a cane. Moreover, neither Plaintiff nor counsel discussed or argued about

the use of a cane at the hearing. AR 455-486. Therefore, there is no medical documentation establishing need, nor are there medical records describing the circumstances of that need.

Notably, Plaintiff himself indicated in an April 7, 2005, SSA Function Report that he used a cane, walker, and wheelchair, yet none had been prescribed by a doctor. AR 126. This Court's review of the medical record reveals that no physician has determined a cane or walker is a medical necessity for Plaintiff. In fact, to the contrary, in 2003, examining physician Dr. Chang opined that "[t]here is no need for assistive devices." AR 152. In 2004, Dr. Chang opined that "[Plaintiff] can stand and walk six hours out of an eight hour day with normal breaks. [Plaintiff] can sit without restriction." There was no mention whatsoever of an assistive device. AR 271. Also in 2004, state agency physician Dr. Ginsburg did not find a medically required hand-held assistive device was necessary. AR 293.

Assuming, arguendo, the ALJ should have considered Plaintiff's subjective statements about his use of a cane, any error was harmless because it did not affect the ALJ's RFC finding that Plaintiff could perform sedentary work. "Even when medically required, the use of a cane does not rule out the ability to perform sedentary work." *Harris v. Astrue*, 2009 WL 2912655 (C.D. Cal.); *see also* SSR 96-9p; *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (holding that where the ALJ's hypothetical incorporated the option of sitting while working, Plaintiff's alleged use of a cane or wheelchair would be irrelevant); *Holt v. Astrue*, 2008 WL 4965877 (C.D. Cal.) (holding that the RFC found by the ALJ "did not require that Plaintiff ambulate, and therefore did not require a decision on whether a cane was necessary or not"). An error by the ALJ is harmless where the mistake is "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Here, the ALJ found that Plaintiff had the RFC to perform sedentary work and, thus, any possible error regarding the cane is harmless.

Plaintiff further argues that the ALJ failed to address his use of a cane when questioning the VE. This argument is unpersuasive. Hypothetical questions need not include a plaintiff's subjective impairments if the ALJ makes specific findings that the plaintiff is not credible. *See Thomas v. Barnhart*, 278 F.3d at 959 (holding that where Plaintiff's need for assistive devices

14

was based on conclusory statements and not objective medical evidence, and in light of a finding of lack of credibility, there was no reason to include Plaintiff's subjective use of devices in hypothetical to VE); *Copeland v. Bowen*, 861 F.2d 536, 540-41 (9th Cir. 1988). Here, the ALJ stated that "[Plaintiff's subjective statements . . . are not found credible in light of the medical evidence and [Plaintiff's] statements and conduct." AR 16. Hence, the ALJ was not required to include Plaintiff's use of a cane in hypothetical questions posed to the VE.

In sum, the ALJ properly considered Plaintiffs prescription of a cane and testimony of the use of a cane, and posed proper inquiries to the VE. Thus, ALJ's decision is supported by substantial evidence and is free of error.

### B.     Breadth of Limitations

Plaintiff argues that the ALJ failed to account for the breadth of limitations described by Drs. Michiel and Murillo. Specifically, Plaintiff argues that Dr. Murillo determined Plaintiff was "unable to sustain detailed or complex work" and Dr. Michiel limited Plaintiff to "one- and two-step instructions" but that the ALJ erred by posing a hypothetical to the VE which limited Plaintiff to "simple repetitive tasks." This argument is unpersuasive.

Plaintiff does not dispute the ALJ's RFC finding that he is limited to simple, repetitive tasks, nor does he dispute the ALJ's step-five finding that he can perform a substantial range of sedentary work. *See* AR 14. Further, Plaintiff concedes that the jobs identified by the VE - assembler, almond blancher, and nut sorter - have the requisite characteristics of simple and repetitive work. *See* AR 483-484. Nor does Plaintiff argue that those jobs do not constitute a significant number of jobs in the national economy that Plaintiff can perform.

Notably too, Plaintiff does not argue that the case should be remanded on this issue alone. Plaintiff does argue that *if* the case is remanded on the issue of the cane, the Court should direct the ALJ to properly consider the limitations described by Drs. Murillo and Michiel. Because the Court has determined the issue regarding the cane adversely to Plaintiff, the argument is essentially moot.

Nonetheless, the ALJ's finding that Plaintiff is limited to simple, repetitive tasks is consistent with the opinions espoused by Drs. Murillo and Michiel. Dr. Murillo stated that

Plaintiff can perform simple and less complex tasks. AR 288. Dr. Michiel stated that Plaintiff was able to carry out one or two step simple job instructions. AR 266.

This Court additionally notes that courts within the Ninth Circuit have consistently held that a limitation regarding simple or routine instructions encompasses a reasoning level of one and two. In *Meissl v. Barnhart*, 403 F.Supp.2d 981, 983-985 (C.D. Cal. 2005), the Central District of California held that a limitation to simple and repetitive tasks was consistent with level two reasoning positions as provided for in the Dictionary of Occupational Titles (DOT). In that case, the claimant was limited to "simple tasks performed at a routine or repetitive pace." *Id*., at 982. The court explained that while the Social Security regulations provided only two categories of abilities with regard to understanding and remembering instructions - "short and simple" and "detailed" or "complex" - the DOT has six gradations for measuring that ability. *Id.*, at 984. The *Meissl* court held that to

> equate the Social Security regulations' use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.

*Meissl v. Barnhart*, 403 F.Supp.2d at 984. The use of the term "uninvolved" and "detailed" in the DOT qualifies the term and refutes any attempt to equate the SSR use of the term "detailed" with its use in the DOT. *Id.* The court found a claimant's RFC must be compared with the DOT's reasoning scale. Level one reasoning requires slightly less than simple tasks that are in some way repetitive. An example of a level one reasoning job would include the job of counting cows as they come off a truck. The court in *Meissl* determined that a limitation to simple repetitive tasks is not inconsistent with positions requiring level two reasoning. *Id.*; *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (a restriction to simple, repetitive tasks adequately captures deficiencies in concentration, persistence and pace).

Here, the reasoning levels for all three jobs identified by the VE involve only level one reasoning. Plaintiff's suggestion of remand for the "ALJ to consider a limitation to one- and two-step instructions" is therefore unnecessary.

This Court finds the limitations posed by the ALJ to the VE adequately described Plaintiff's limitations and are therefore supported by substantial evidence and are free of legal error.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Ted Leach.

IT IS SO ORDERED.

Dated: **July 1, 2010**            **/s/ Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE